**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CARIDAD ALEMAN GONZALES,

    Petitioner,

    v.                                                                No. 2:26-cv-00695-SMD-KK

MARKWAYNE MULLIN, *et al.*,

    Respondents.

**ORDER DENYING RESPONDENTS' MOTION FOR RECONSIDERATION**

**THIS MATTER** is before the Court on Respondents' motion to reconsider (Doc. 11) the Court's grant of Petitioner's request for habeas corpus relief (Doc. 10). In particular, Respondents object to the language in Paragraph Six of the conclusion and ask the Court to remove it. Paragraph Six states that "Respondents SHALL NOT remove Petitioner to any third country to which *she does not have a removal order* without first providing her with constitutionally compliant procedures." Doc. 10 at 5. For the reasons discussed below, Respondents' motion is **DENIED**.

    I.      Paragraph Six Provides Respondents with Sufficient Notice.

Respondents first aver that Paragraph Six is so vague that they cannot predict "what future action the Court may find to have violated its order." Doc. 11 at 1. The Court does not find this concern to be compelling. For one, the government is always required to provide "constitutionally compliant procedures," even when removing non-citizens. *A.A.R.P. v. Trump*, 605 U.S. 91, 94, (2025); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Paragraph Six does not alter this reality; its scope is identical to the Constitution's. There is thus no difference between the responsibility articulated in Paragraph Six and the Constitution's everyday demands. Though the government may violate its text despite

good faith efforts to the contrary, that is problem this Court cannot resolve.  Paragraph Six leaves Respondents' liability unchanged; it merely asks them to conduct themselves in a way otherwise expected and already promised.  Doc. 11 at 1 ("Respondents have no intention to remove anyone, including the Petitioner, without complying with constitutionally procedures [sic].").

Luckily, in this case, the risk of an unwitting constitutional violation is quite low. Respondents benefit from a litany of cases from this District Court and others throughout the country considering what constitutional protections immigrant detainees are entitled to prior to removal.  *See, e.g.*, *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1246 (D.N.M. 2025); *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1284 (D.N.M. 2026); *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1154 (D. Minn. 2025). Here, as in most other cases, Respondents failed to provide Petitioner with sufficient Fifth Amendment Due Process by detaining her for nearly eight months without bond after arresting her at an immigration hearing.  In avoiding another constitutional misstep, Respondents may look to this Court's recent orders and constitutional case law to apprise themselves of how the Fifth Amendment, and other constitutional amendments, apply to the government's removal of non-citizens from the United States.  *See, e.g.*, *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350 (2006) (affirming that illegal non-citizens are entitled to the Fifth and Sixth Amendments' guarantees); *Zadvydas*, 533 U.S. at 690–93; *Rodriguez-Casillas v. Lynch*, 618 F. App'x 448, 452 (10th Cir. 2015);*Guitierrez-Tavares v. I.N.S.*, 92 F.3d 1192 (9th Cir. 1996) ("The government must provide aliens subject to deportation procedural due process of law."); *see generally Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

Paragraph Six provides Respondents with sufficient guidance on how to conform their conduct to the Constitution.  Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense" by being prevented from committing constitutional violations.  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Indeed, if Paragraph Six were cut from the Court's order, Respondents would be just as likely to find themselves running afoul of "a standard that the Court, post-removal, finds was required."  Doc. 11 at 1.

II.       Paragraph Six's Requirements Fall within the Court's Jurisdiction.

The Court finds that Respondents' jurisdictional arguments likewise miss the mark.  Respondents insist that "[h]ow, when, and where the Petitioner will ultimately be removed was not raised."  Doc. 11 at 2.  The Court has placed no restrictions on those decisions.  Paragraph Six concerns constitutional process—Respondents can remove Petitioner wherever, whenever, and however they would like, so long as they do so in accordance with the Fifth Amendment.  Similarly, Respondents mistakenly rely on 8 U.S.C. § 1252(g) to assert that the Court "lacks jurisdiction to decide where Petitioner is removed."  *Id.*  First, Paragraph Six does not interfere with where Petitioner can or cannot be removed to.  Second, § 1252(g)'s terms do not pertain to Paragraph Six.  Section 1252(g) strips courts of jurisdiction to hear claims arising from removal orders.  Paragraph Six will never involve review of a removal order since it applies in the narrow, and ideally uncommon scenario, where the government attempts to remove Petitioner *without* a removal order.  *See* Doc. 10 at 5.  Paragraph Six reflects the Court's inherent and long-established power to safeguard the Constitution and advance the public interest "in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."  *Nken v. Holder*, 556 U.S. 418, 436 (2009); *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1106 (10th Cir. 2021).  That power cannot be withdrawn by statute.  *Wittgenstein v. I.N.S.*,

124 F.3d 1244, 1245 (10th Cir. 1997) ("[W]hen 'constitutional rights applicable to aliens may be at stake, judicial review may not be withdrawn by statute.'").

III.     Review of the Habeas Petition is Ripe Because Petitioner is in Respondents' Custody.

Lastly, Respondents make a sudden about-face from the position articulated in their response. Previously, Respondents conceded that the Court's decision in *Martin Ramirez v. Noem*, Case No. 2:26-cv-00063, (D.N.M. Feb. 11, 2026) controls the result in this case and that "the facts are not materially distinguishable for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." Doc. 7 at 3. Respondents now contend that Petitioner's habeas petition is not ripe for review because she appealed her order of deportation to the Board of Immigration Appeals ("BIA"). Doc. 11 at 3. Respondent had already exercised her right to appeal at the time Respondents filed their response. Doc. 7 at 2 ("Petitioner reserved her right to appeal and did in fact file an appeal on October 2, 2025.").

The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 407, 525 (2004); *see generally* U.S. Const., art. I, § 9, cl.2. Federal courts have jurisdiction to review an immigrant detainee's continued detention. *See* 28 U.S.C. § 2241; *Demore v. Kim*, 538 U.S. 510 (2003); *Riley v. I.N.S.*, 310 F.3d 1253, 1256 (10th Cir. 2002) ("The INS did not strip § 2241 federal habeas jurisdiction in either 8 U.S.C. § 1252(g), INA § 242(g), or 8 U.S.C. § 1105(a) because neither contains a clear statement referencing § 2241 as is required when attempting to remove federal habeas jurisdiction."). Respondents do not cite any cases supporting the proposition that federal courts lose habeas jurisdiction while a detainee has an appeal pending before the BIA. *See* Doc. 11 at 3.

Reviewing Petitioner's request for habeas relief is both within the Court's jurisdiction and a ripe issue. In granting the writ of habeas corpus, the Court premised its decision solely on the

4

legality of Petitioner's detention. The order does not implicate the commencement of removal proceedings against Petitioner or the terms of her removal order. It is therefore wholly independent of the matters enumerated in § 1225(g). And, of course, the propriety of that detention is ripe for consideration because Petitioner is currently in Respondents' custody.

The Court's May 1 Order directed Respondents to "release Petitioner within 72 hours of this Order being entered." Doc. 10 at 5. That 72-hour window has expired. A motion to reconsider does not automatically stay or invalidate the existing order. *See In re Anderson*, 604 F. App'x 735, 742 (10th Cir. 2015) ("[Debtor] cites to no authority, and we have found none, supporting the proposition that a motion to reconsider stays the effectiveness or operation of the subject order; only a stay does so, but one was not requested."). Respondents cannot unilaterally defy a standing Court order; if they seek relief from its directives, they must move for a stay rather than assuming the status quo is preserved during reconsideration.

## CONCLUSION

**IT IS THEREFORE ORDERED** that:

(1) Respondents' motion for reconsideration (Doc. 11) is **DENIED**.

(2) Respondents shall **RELEASE** Petitioner within 24 hours of entry of this Order.

(3) Respondents **SHALL COMPLY** with all other provisions, including Paragraph Six, of the Court's order granting Petitioner's request for the writ of habeas corpus. *See* Doc. 10 at 5–6.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**